UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SONNY BORJA,<br><br>    Plaintiff,<br><br> v.<br><br>WESTERN STATE HOSPITAL et al.,<br><br>    Defendants. | CASE NO. 3:24-cv-05266-MJP-BAT<br><br>**REPORT AND RECOMMENDATION** |

The Court recommends Plaintiff's *pro se* 42 U.S.C. § 1983 complaint be dismissed without prejudice. The Court reviewed Plaintiff's complaint under 28 U.S.C. § 1915A and found it deficient. Rather than immediately dismissing the matter, the Court issued an order on May 17, 2024 directing Plaintiff's to file an amended complaint by **June 17, 2024**, to cure the deficiencies the Court identified or face dismissal of the action. Plaintiff has not responded to the Court's order and the matter should thus be dismissed.

**BACKGROUND**

In its order directing Plaintiff to file an amended complaint, the Court detailed Plaintiff's allegations and why the complaint was deficient.

In the original complaint, Plaintiff indicated he is currently detained at King County Jail. Dkt. 1-1 at 5, and alleged his rights were violated when he was at Western State Hospital (WSH)

REPORT AND RECOMMENDATION - 1

for purposes of "competency restoration/extended evaluation" in connection with his criminal case. *Id.* at 9. Plaintiff names as Defendants: (1) Western State Hospital (WSH), Administrative Staff; (2) Akosua Yeboah, Registered Nurse 2 at WSH; and (3) Kathy A. Davies, Director of Patient Rights and Grievances at WSH. *Id.* at 6.

Plaintiff alleges Defendant Yeboah "harassed" Plaintiff for being on the phone too long and for speaking too loudly with his fiancé. *Id.* at He alleges Defendant Yeboah repeatedly warned Plaintiff there is a 15-minute time limit on phone use and that he was too loud on the phone. *Id.* at 9-12. Plaintiff claims the patient handbook limits phone calls to 15-minutes only if someone else is waiting. *Id.* at 40.

Plaintiff specifically alleges this "harassment" occurred on January 31, 2024, and February 8, 2024. *Id.* Plaintiff alleges on February 8, 2024, his fiancé reported Defendant Yeboah's "unprofessional behavior" to his social worker Chad Cummings and Mr. Cummings reported the issue to the "neglect abuse call line" on Friday, February 9, 2024. *Id.* Plaintiff alleges it was agreed he would submit a written statement regarding the incident, but he received the administrative report of incident (A.R.O.I.) just three days later – after the weekend -- on Monday, February 12, 2024, before he could submit a statement. *Id.* at 13-15. Plaintiff indicates the report incorrectly stated, "hospital security was dispatched to the ward to take your statement." *Id.* He indicates he appealed, and they acknowledged no statement had been taken from Plaintiff but issued another A.R.O.I. reaching the same conclusion but omitting the statement about security seeking to obtain his statement. *Id.*

Plaintiff alleges on January 14, 2024, when returning from visitation with his family he was approached by Defendant Yeboah and security and asked about his purple head wrap. *Id.* at 15-17. He indicated he had obtained it from staff at the supplies/laundry window and she

REPORT AND RECOMMENDATION - 2

responded, "are you sure your wife didn't give you this?" *Id.* He indicates he was told by his social worker that Defendant Yeboah had "fabricate[d] the belief" that Plaintiff's fiancé brought in the head wrap which she classified as contraband. *Id.* Plaintiff indicates as a result his "level was dropped from 3 to 2" and his family visits were taken away for two weekends while an investigation was done after which he was cleared of any wrongdoing. *Id.*

Plaintiff alleges on February 7, 2024, a charge nurse approached him along with Defendant Yeboah and asked for a urine sample "to make sure your wife isn't bringing in any contraband." *Id.*

Plaintiff appears to argue Defendant Yeboah harassed him in order to provoke a reaction and call security or to establish grounds for prescribing psychotropic medication. *Id.* at 42.

Plaintiff indicates he filed a "plethora" of complaints related to the "unethical and malicious behavior of staff." *Id.* at 18. Plaintiff alleges each time he submitted a complaint the "Patient Rights Investigation Office" would report the exact same outcome verbatim "not enough evidence to substantiate your allegations." *Id.*

Plaintiff states on February 12, 2024, he was placed on a transfer list back down to ward F-3 without explanation. *Id.* He alleges "certain individuals" sought to portray him inaccurately as a "behavioral safety issue" to justify his transfer. *Id.* at 19-22. Plaintiff alleges his transfer was retaliation for filing complaints. *Id.* He alleges ward "F-3" was on "code red status, frozen from patient movement" due to a Covid-19 outbreak, and "house[ed] the more dangerously violent patients whom physically attack without warning, that suffer the more acute cases of mental health with unsafe behavioral problems." *Id.* He also alleges his level was "stripped", taking away his family visits. *Id.*

Plaintiff indicates he filed a complaint regarding his transfer on February 15, 2024,

REPORT AND RECOMMENDATION - 3

indicating that the transfer placed him at risk of physical harm by assault. *Id.* He indicates just four days later, on February 19, 2024, he was punched in the head by another patient at WSH. *Id.* at 23.

In Count I, Plaintiff alleges Defendant Yeboah's actions violated his rights to personal privacy under RCW 10.77 and 42 C.F.R. 482.13. at 24. *Id.* at 24-31.

In Count II, Plaintiff alleges Defendant Yeboah and WSH Administration violated his rights under 42 C.F.R. 482.13 section 21 "to not be presumed incompetent." *Id.* at 32-35.

In Count III, Plaintiff alleges Defendant Yeboah and WSH Administration violated his rights under 42 C.F.R. 482.13, Section 4, to be free from all forms of abuse and harassment. *Id.* at 35-42.

In Count IV, Plaintiff alleges Defendant WSH Administration retaliated against him by imposing unjustified disciplinary sanctions in violation of 42 U.S.C. § 12203. *Id.* at 43-51. Plaintiff alleges Defendant WSH Administration retaliated against him for filing complaints by improperly labeling him as a "safety behavioral concern" and taking away his family visits and transferring him to ward F-3. *Id.*

In Count V, Plaintiff alleges Defendant Davies violated his due process rights to a fair hearing by failing to properly investigate and denying his grievances. *Id.* at 52-62. He alleges she neglected to procure his statement on one occasion, failed to review hospital camera footage, and ruled in support of the violations on every issue. *Id.*

As relief, Plaintiff seeks punitive damages of $2,000,000.00 and compensatory damages of $500,000.00. *Id.* at 63-67. He also seeks a declaratory judgment to ensure the clarity of his legal rights and an injunction to prevent retaliation and harassment, unsafe or harsh conditions, patterns of authoritative abuse or harassment, inadequate medical care, continued violation of

REPORT AND RECOMMENDATION - 4

any of his rights. *Id.*

## DISCUSSION

Under the Prison Litigation Reform Act of 1995, the Court must screen complaints filed by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must "dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* at (b); 28 U.S.C. § 1915(e)(2); *see Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998).

### A. "Western State Hospital, Administrative Staff" - Improper Defendant and Personal Participation

To state a claim for relief under 42 U.S.C. § 1983, Plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

To satisfy the second prong, Plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or omitting to perform an act which is legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. *Leer*, 844 F.2d at 633.

REPORT AND RECOMMENDATION - 5

Further, a § 1983 suit cannot be based on vicarious liability alone but must allege the defendant's own conduct violated the plaintiff's civil rights. *City of Canton v. Harris*, 489 U.S. 378, 385-90 (1989). Moreover, vague and mere conclusory allegations unsupported by facts are not sufficient to state a section 1983 claim. *See Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984).

Plaintiff names "Western State Hospital, Administrative Staff" but does not identify any individual member of the staff by name who allegedly violated his rights. The Court is unable to serve the complaint until Plaintiff provides the name of the individual or individuals he is alleging violated his rights and, for each individual, provides a short, plain statement telling the Court: (1) the constitutional right Plaintiff believes was violated; (2) the name of the person who violated the right; (3) exactly what the individual did or failed to do; (4) how the action or inaction of the individual is connected to the violation of Plaintiff's constitutional rights; and (5) what specific injury Plaintiff suffered because of the individual's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976).

To the extent plaintiff attempts to name Western State Hospital (WSH) itself as a defendant, plaintiff is advised that an entity of the State of Washington, is not a proper defendant in a § 1983 case. A claim under § 1983 may only be brought against "persons" acting under color of state law. 42 U.S.C. § 1983. However, for the purposes of § 1983, a state is not a "person." *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Similarly, an entity that is an arm of the state is also not a "person" under § 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990); *see also Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (concluding that the suit against the state Board of Corrections was barred by the Eleventh Amendment).

REPORT AND RECOMMENDATION - 6

Additionally, the Eleventh Amendment to the United States Constitution bars a person from suing a state in federal court without the state's consent, and there is no evidence the State of Washington has waived its Eleventh Amendment immunity in federal courts. *See* U.S. Const. amend. XI; *Edelman v. Jordan,* 415 U.S. 651, 662–63 (1974) ("While the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."). "State agencies are similarly immune." *Spokane Cty. Deputy Sheriffs Ass'n v. State of Washington Dep't of Emp. Sec.*, 317 F. App'x 599, 600–01 (9th Cir. 2008).

Western State Hospital, an entity of the State of Washington, cannot be sued under § 1983 and thus, to the extent plaintiff intends to name WSH, it is an improper defendant in this case.

**B.   Federal Regulations**

In Counts I, II, and III, Plaintiff alleges Defendant Yeboah (and for Counts II and III he also names WSH Administration) violated his rights under various sections of 42 C.F.R. 482.13. These are federal regulations that set forth requirements for hospitals participating in Medicare and Medicaid. *See* 42 C.F.R. § 482.1(b); *Vinson v. Noele*, No. 319CV05788, 2019 WL 4858803, at *2 (W.D. Wash. Oct. 2, 2019).

"[A]n agency regulation cannot create individual rights enforceable through § 1983." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 935–36 (9th Cir. 2003). This is because only acts of Congress—not the executive—can result in rights that can be vindicated under § 1983. *See id.* at 939; *Vinson*, 2019 WL 4858803, at *2. Therefore, plaintiff may not bring a cause of action for violation of § 482.13 under § 1983.

REPORT AND RECOMMENDATION - 7

Plaintiff also cannot bring a free-standing private right of action under § 482.13 because an implied right of action must be created by Congress. *See id.* at 938; *Vinson*, 2019 WL 4858803, at *2. "As plaintiff relies solely on a regulation and sets forth no statute or other Congressional authorization for a private right of action, he cannot bring a private cause of action to challenge a violation of § 482.13." *Vinson*, 2019 WL 4858803, at *2.

**C.     Washington Statutes**

In Count I, Plaintiff also alleges violation of his rights to personal privacy under chapter 10.77 of the RCW which deals with procedures for the criminally insane.

First, it is unclear to the Court which particular Washington statute plaintiff believes was violated and this, in and of itself, renders his claims insufficient. *Vinson*, 2019 WL 4858803, at *2.

Second, plaintiff cannot bring a cause of action under § 1983 solely for violations of Washington State law. *See Galen v. Cty. of L.A.*, 477 F.3d 652, 662 (9th Cir. 2007). Thus, to the extent Plaintiff wishes to bring a claim under state law, he must amend his complaint to state a claim under § 1983 before this Court will exercise supplemental jurisdiction over any state-law claims. *See, e.g.*, *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc); *Vinson*, 2019 WL 4858803, at *2.

**D.     Harassment**

Plaintiff alleges Defendant Yeboah engaged in "harassment" against him.

Generally, "[a]llegations of verbal harassment and abuse fail to state a claim cognizable under 42 U.S.C. § 1983." *Karanja v. Warden*, No. C09-5391 RBL/KLS, 2009 WL 2473669, at *2 (W.D. Wash. Aug. 6, 2009); *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir. 1996), *amended* 135 F.3d 1318 (9th Cir. 1998) (disrespectful and assaultive comments by prison guard not

REPORT AND RECOMMENDATION - 8

enough to implicate 8th Amendment); *Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir. 1987).

Accordingly, Plaintiff's general allegations of verbal harassment by Defendant Yeboah, fail to state a claim.

**E.  Retaliation**

In Count IV, Plaintiff appears to allege Defendant WSH Administration retaliated against him by imposing unjustified disciplinary sanctions in violation of 42 U.S.C. § 12203. Plaintiff alleges Defendant WSH Administration retaliated against him for filing complaints by improperly labeling him as a "safety behavioral concern" and taking away his family visits and transferring him to ward F-3.

Section 12203(b) of Title 42 makes it unlawful to "coerce, intimidate, threaten, or interfere" with any individual in the exercise or enjoyment of their rights under the Americans with Disabilities Act (ADA). 42 U.S.C. § 12203(b). But Plaintiff's complaint fails to identify any right under the ADA that Plaintiff could not exercise or enjoy due to any Defendants' alleged coercion or other prohibited conduct under Section 12203(b). *See Kamakeeaina v. Armstrong Produce, Ltd.*, No. 18-CV-00480-DKW-RT, 2019 WL 1320032, at *7 (D. Haw. Mar. 22, 2019) (finding complaint failed to state a claim on this basis).

The Court notes that Plaintiff has a First Amendment right to use the WSH grievance procedures and to be free from retaliation for doing so. *Hicks v. Woehl*, No. 319CV05893, 2020 WL 3086118, at *3 (W.D. Wash. Feb. 25, 2020); *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) ("Prisoners have a First Amendment right to file grievances [and lawsuits] against prison officials and to be free from retaliation for doing so.").

REPORT AND RECOMMENDATION - 9

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. *Grenning v. Klemme*, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014). This standard for retaliation claims applies equally to pretrial detainees. *Chavez v. Kings Cnty.,* No. 120CV00369, 2020 WL 4936911, at *9 (E.D. Cal. Aug. 24, 2020), *report and recommendation adopted*, No. 120CV00369, 2020 WL 7074807 (E.D. Cal. Dec. 3, 2020) (citing *see Grenning v. Bisson*, 382 F. App'x 574, 575 (9th Cir. 2010) (applying *Rhodes* to reverse dismissal of pretrial detainee's retaliation claim).

Plaintiff appears to allege WSH staff retaliated against him for filing grievances by transferring him to ward "F-3" which was on "code red status, frozen from patient movement" due to a Covid-19 outbreak, and "house[ed] the more dangerously violent patients whom physically attack without warning, that suffer the more acute cases of mental health with unsafe behavioral problems." He also alleges his level was "stripped", taking away his family visits.

However, Plaintiff's complaint does not identify a proper defendant responsible for the alleged retaliation against him and, as such, fails to state a claim. If Plaintiff intends to pursue a First Amendment retaliation claim, he must identify and name as defendants the individuals he alleges retaliated against him and he must allege facts to support the elements of a retaliation claim outlined above.

REPORT AND RECOMMENDATION - 10

### F. Due Process

In Count V, Plaintiff alleges Defendant Davies violated his due process rights to a fair hearing by failing to properly investigate and denying his grievances.

Plaintiff has no stand-alone due process rights to a specific, or even an efficient, administrative grievance process. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."). The denial, rejection, cancellation, delay in processing, or ignoring of a grievance does not constitute a due process violation. *See Evans v. Skolnik*, 637 Fed. Appx. 285, 288 (9th Cir. 2015), *cert. dism'd*, 136 S. Ct. 2390 (2016) ("An allegation that a prison official inappropriately denied or failed to adequately respond to a grievance, without more, does not state a claim under § 1983.").

Allegations related to the conditions of Plaintiff's confinement as a pretrial detainee are analyzed under the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Vazquez v. Cty. of Kern*, 949 F.3d 1153, 1163-64 (9th Cir. 2020). "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (quoting *Bell*, 441 U.S. at 535). "Pretrial detainees have a substantive due process right against restrictions that amount to punishment." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002). In order to constitute punishment, a detainee must show that defendant's action (1) caused him "to suffer some harm or 'disability'"; and (2) the purpose of the action was to punish the detainee. *Demery*, 378 F.3d at 1029. Moreover, "[p]retrial detainees have a right to procedural due process before they are subjected to more severe conditions of confinement than other detainees." *Shorter v. Baca*, 895 F.3d 1176, 1190 (9th Cir. 2018); *see also Carlo v. City of*

1 | *Chino*, 105 F.3d 493, 498 n.1 (9th Cir. 1997) ("a pretrial detainee does have an interest,

2 | grounded directly in the federal Constitution, in not being punished without a due process

3 | hearing").

4 | Here, Plaintiff's claims appear to challenge Defendant Davies' investigation and denial of

5 | his grievances and, without more, fail to state a claim. If Plaintiff intends to pursue a due process

6 | claim based upon his transfer to ward F-3, he must allege facts to support the elements set forth

7 | above in his amended complaint.

8 | **G.    Failure to Protect**

9 | The Court notes that it appears Plaintiff may also be attempting to allege Defendants

10 | violated his rights by failing to protect him from attack by another patient in ward F-3.

11 | Because plaintiff is a pretrial detainee, challenges to conditions of confinement imposed

12 | upon him are governed by the Fourteenth Amendment Due Process Clause. *Bell v. Wolfish*, 441

13 | U.S. 520, 535 n. 16 (1979); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). "A pretrial

14 | detainee has a due process right to be free from violence from other inmates." *Castro v. Cnty. of*

15 | *Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016). "In assessing conditions of confinement for

16 | pretrial detainees, the Court considers whether the conditions amount to punishment, causing

17 | harm or disability significantly exceeding or independent of the inherent discomforts of

18 | confinement, or whether they merely result from some legitimate governmental purpose. *See*

19 | *Doe v. Kelly*, 878 F.3d 710, 714, 720 (9th Cir. 2017).

20 | The Court evaluates a pretrial detainee's Fourteenth Amendment failure-to-protect claim

21 | under an objective deliberate indifference standard. *See Castro*, 833 F.3d at 1070 (applying

22 | objective deliberate indifference standard to failure-to-protect claims). A pretrial detainee must

23 | demonstrate a defendant's acts or omissions were objectively unreasonable and identify

REPORT AND RECOMMENDATION - 12

objective facts indicating the "challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that [objective]." *Kingsley*, 576 U.S. at 398.

The elements of a pretrial detainee's failure-to-protect claim against an individual defendant under the objective deliberate indifference standard are as follows:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 833 F.3d 1060, 1071. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Id.* (quoting *Kingsley*, 576 U.S. at 393).

If Plaintiff intends to pursue a due process claim based upon his transfer to ward F-3 and Defendants' alleged failure to protect him, he must allege facts to support each element of the claim as outlined above in his amended complaint.

## CONCLUSION

The Court advised Plaintiff his complaint was deficient for the reasons above and directed Plaintiff to file an amended complaint by **June 17, 2024** and further advised Plaintiff that if an amended complaint is not timely filed or fails to adequately address the deficiencies in the original complaint that the court would recommend dismissal of this action. Plaintiff has not responded to the Court's order, and it is therefore recommended the matter be dismissed without prejudice.

**OBJECTIONS AND APPEAL**

This Report and Recommendation is not an appealable order. Therefore, Plaintiff should not file a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed no later than **July 5, 2024.** The Clerk shall note the matter for **July 5, 2024**, as ready for the District Judge's consideration. The failure to timely object may affect the right to appeal.

DATED this 20th day of June, 2024.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14